**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **WELLINGTON RESOURCE GROUP LLC** | : : | |
| | : | **Case No. 2:12-CV-104** |
| **Plaintiff,** | : : | **JUDGE ALGENON L. MARBLEY** |
| v. | : : | |
| **BECK ENERGY CORPORATION,** | : | **Magistrate Judge Elizabeth P. Deavers** |
| **Defendant.** | : : | |

**OPINION & ORDER**

## I.     INTRODUCTION

This matter is before the Court on Defendant and Third-Party Plaintiff Beck Energy Corporation's ("Beck") Renewed Motion to Dismiss (Doc. 76) against Intervenor-Plaintiff Transact Partners International, LLC's ("Transact") First Amended Complaint (Doc. 61). Pursuant to Fed. R. Civ. P. 12(b)(6), Beck moves to dismiss Transact's Second through Seventh Causes of Action. In addition, also before the Court is Plaintiff and Third-Party Defendant Wellington Resource Group's ("Wellington") Motion for Oral Argument on Beck's above-mentioned Motion to Dismiss (Doc. 98), as well as Transact's Motion for Leave to File Notice of Supplemental Authority Instanter (Doc. 139) regarding this same Motion to Dismiss. For the reasons stated below, Beck's Motion to Dismiss is hereby **GRANTED IN PART AND DENIED IN PART**; Wellington's Motion for Oral Argument is hereby **DENIED** as moot; and Transact's Motion for Leave to File Notice of Supplemental Authority Instanter is hereby **DENIED** as moot.

## II.     PROCEDURAL POSTURE

This case originated with a suit brought in diversity jurisdiction by Wellington against Beck, alleging breach of contract and unjust enrichment / quantum meruit. Shortly after the case began, Transact sought and was granted leave to intervene, and filed claims against both Wellington and Beck.

The parties have filed several rounds of amended pleadings, with the result that Beck now asserts counterclaims against Wellington, as well as third-party claims against individuals associated with Wellington, and Third-Party Defendants Michael Sahadi and Levencrest Consulting, Inc.  Wellington, Levencrest, and the Third-Party Defendants have answered, while Beck has answered Wellington but moved to dismiss Transact's claims against it.  In addition, Wellington sought and was granted leave to file a memorandum of law in opposition to Beck's motion to dismiss Transact's claims.  Wellington also requested oral argument regarding Beck's motion, while Transact recently requested leave to add supplemental information relating to the briefing regarding the motion.  Both of these motions are resolved herein, together with the underlying Motion to Dismiss.  These motions have been amply briefed, and are ripe for review.[1]

### III.  STATEMENT OF FACTS

Given the number of parties involved, as well as the voluminous filings, multiple competing versions of the events of this case have been presented to this Court.  For the purposes of this Motion to Dismiss, however, this Court accepts as true the facts as pleaded by non-movant Transact in its First Amended Complaint (Doc. 61).

This story began, from Transact's point of view, in October 2010, when it was approached by representatives of Wellington, and shown the assets owned by Wellington's client, Beck.  (*Transact's Amended Cmplt.*, Doc. 61 at ¶ 7).  The "Beck Assets" included oil and gas leases, oil and gas wells, and related assets, in Monroe, Belmont, and Nobel Counties in Ohio.  *Id.* at ¶ 8.  Transact agreed to enter into a co-brokerage agreement with Wellington, whereby Transact would utilize its expertise and knowledge of industry contacts to find interested purchasers of the Beck Assets and put them in contact with Beck, and in return receive 2% of the total transaction price in compensation, if Transact was successful in

---

[1] Meanwhile, Intervenor Marcellus Shale Land Acquisition Group, LLC ("MSLAG"), sought and was granted leave to intervene, and in turn filed claims against Beck.  Beck moved to dismiss, in a motion also pending before this Court (but not currently *sub judice*).  Beck's Motion to Dismiss is resolved in a parallel Opinion and Order.  Transact then filed cross-claims against MSLAG, which MSLAG moved to dismiss; MSLAG's motion awaits resolution by this Court.

"presenting a ready, willing and able purchaser, and [if] such purchaser in fact complete[d] the purchase of [the Beck Assets]." *Id.* at ¶¶ 8-12. Before entering into the co-brokerage agreement, Transact asked Wellington to reduce its agreement with Beck to writing; Wellington represented that it had done so in late January 2011 (though Wellington and Beck in fact executed their written contract on February 28, 2011). *Id.* at ¶¶ 10-11. Under the terms of this contract, Wellington agreed to provide Beck "with prospective purchasers for oil and gas leases to which Beck possessed the oil and gas rights." *Id.* at ¶ 11 (quoting Wellington's Amended Complaint, Doc. 31, at ¶ 18). Transact and Wellington executed their co-brokerage agreement on January 31, 2011. *Id.* at ¶ 11.

In April 2011, Brian Reilly, principal of Transact, spoke with several oil and gas industry contacts regarding the Beck Assets, including representatives of XTO Energy, Inc. ("XTO"). *Id.* at ¶ 13. Mr. Reilly also marketed the Beck Assets to Eclipse Energy ("Eclipse"), which led to a meeting between Beck principal, Raymond Beck, and Eclipse. *Id.* at ¶ 14. During this time, Mr. Reilly explained his role to Mr. Beck, and made himself available to Mr. Beck via phone and email. *Id.* at ¶¶ 16-19.

Ultimately, no deal was reached between Beck and Eclipse, but in June 2011, Mr. Reilly again contacted representatives of XTO, at which time XTO expressed its interest in the Beck Assets. *Id.* at ¶ 20. A phone conference was held in July 2011 between representatives of XTO and Wellington, which led to several more meetings and telephone conferences between Mr. Beck and representatives of Wellington and XTO. *Id.* at ¶¶ 20-21.

In August and September 2011, Mr. Reilly sought information from Wellington concerning the Beck-XTO negotiations, at which time he was informed that Mr. Beck had requested that all communications run through Wellington. *Id.* at ¶ 22. Several weeks later, Wellington informed Transact that it too had been shut out of the Beck-XTO negotiations. *Id.* at ¶ 23. In November 2011, Beck and XTO executed a purchase and sale agreement for the Beck Assets, and in December Beck executed two

3

Assignments and Bills of Sale, conveying the Beck oil and gas leases and related properties. The purchase price paid by XTO was $84,961,346.00. *Id.* at ¶¶ 24-26.

In January 2012, when Transact inquired as to when Beck would pay Wellington, and thus Wellington would pay Transact its 2%, Mr. Reilly was informed that Wellington would not pay. *Id.* at ¶ 28. Mr. Reilly spoke to Wellington's attorney, who informed him that Wellington did not consider Transact's claims to be "valid," and invited Transact instead to demand a "nominal sum" in payment. *Id.*

Wellington commenced this action against Beck on February 1, 2012 (Doc. 1). Transact moved to intervene on March 14 (Doc. 9), and filed its Third Party Complaint on July 23 (Doc. 46), and its Amended Complaint on September 25, 2012 (Doc. 61). One month later, Beck filed the present motion to dismiss Counts Two through Seven of Transact's Amended Complaint (Doc. 76).

## IV.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows for a case to be dismissed for "failure to state a claim upon which relief can be granted." Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). Thus, the Court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). Although liberal, Rule 12(b)(6) requires more than bare assertions of legal conclusions. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted). Rather, the complaint must "'give the defendant fair notice of what the claim is, and the grounds upon which it rests.'" *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). In short, a complaint's factual allegations "must be enough to raise a right to relief about the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

# V.  ANALYSIS

Beck raises two objections to Transact's claims.  First, Beck moves to dismiss Transact's causes of actions against it arising from breach of contract, on the grounds that no contract existed between Beck and Transact.  (*Beck's Motion to Dismiss*, Doc. 76 at 8-10).  Second, Beck asserts that, regarding all of Transact's claims, Transact cannot recover either in law or equity, because oil and gas leases fall under the meaning of "real estate" as defined in the Ohio Revised Code, compensation for the brokering of which requires a person or entity to be a licensed "real estate broker" within the meaning of O.R.C. § 4735.01(A).  (Doc. 76 at 10-14).  Because Transact failed to plead and prove that it is a licensed real estate broker, Beck argues, O.R.C. § 4735.21 bars recovery of unpaid fees.  (Doc. 76 at 15-19).

Because federal jurisdiction in this case is premised on diversity, the Court applies Ohio substantive law.  *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008).  In resolving issues under Ohio law, the Court "look[s] to the final decisions of [Ohio's] highest court, and, if there are no decisions directly on point," this Court must make "an *Erie* guess to determine how that court, if presented with the issue, would resolve it."  *Conlin v. Mortgage Electronic Registration Systems, Inc.*, 714 F.3d 355, 358-59 (6th Cir. 2013) (referencing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).  In this undertaking, "intermediate state appellate courts' decisions are also viewed as persuasive unless it is shown that the state's highest court would decide the issue differently."  *Id.* at 359 (internal quotation omitted).

## A.  Breach of Contract Claims

A claim for breach of contract under Ohio law requires that a claimant prove: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff.  *Savedoff*, 524 F.3d at 762.  Proof of all of the essential elements of a contract is required in order to maintain a breach of contract claim.  *Kostelnik v. Helper*, 770 N.E.2d 58, 61 (Ohio 2002).

For its part, Transact insists that it never intended to assert a breach of contract claim against Beck.  (*Transact's Opp. to Beck's Motion to Dismiss*, Doc. 85 at 5).  If so, it is difficult to understand

what Transact intended when it incorporated into its Complaint not only the factual allegations found in Wellington's Amended Complaint, but also all five Counts asserted by Wellington against Beck – including, presumably, Counts I, II, and V of Wellington's Amended Complaint, each for breach of contract.  (*See* Doc. 61 at ¶ 47) ("Transact is entitled to assert its own rights with regard to all of the causes of action asserted against Beck in Wellington's Amended Complaint").  To the extent that Transact asserts claims against Beck under the doctrines of unjust enrichment and quantum meruit, such claims sound in equity, not contract, and are not challenged by Beck in this portion of its Motion to Dismiss.  But as Beck correctly points out, Transact has offered no allegations that a contract ever existed between it and Beck.  Without a contract, there can be no breach.  *Shampton v. Springboro*, 786 N.E.2d 883, 887 (Ohio 2003).  As such, Counts III, IV, and VII of Transact's Amended Complaint are hereby **DISMISSED**.

## B.  Real Estate Claims

The bulk of Beck's argument challenges the ability of Transact to recover, either in law or equity, on the grounds that Transact is not a licensed real estate broker in Ohio.  Beck's argument proceeds, at core, in four steps: (1) oil and gas leases are included within the meaning of "real estate" as defined by O.R.C. § 4735.01(B)[2]; (2) any person that sells, purchases, lists, offers, or negotiates the sale of "real estate" for a commission is a "real estate broker" under O.R.C. §§ 4735.01(A)[3] & 4725.01(H)[4]; (3) a "real

---

[2] § 4735.01(B) provides that "'[r]eal estate' includes leaseholds as well as any and every interest or estate in land situated in this state, whether corporeal or incorporeal, whether freehold or nonfreehold, and the improvements on the land, but does not include cemetery interment rights."

[3] § 4735.01(A) provides, in relevant part, that "'[r]eal estate broker' includes any person, partnership, association, limited liability company, limited liability partnership, or corporation, foreign or domestic, who for another, . . . , and who for a fee, commission, or other valuable consideration, or with the intention, or in the expectation, or upon the promise of receiving or collecting a fee, commission, or other valuable consideration . . . (1) Sells, exchanges, purchases, rents, or leases, or negotiates the sale, exchange, purchase, rental, or leasing of any real estate; (2) Offers, attempts, or agrees to negotiate the sale, exchange, purchase, rental, or leasing of any real estate; (3) Lists, or offers, attempts, or agrees to list, or auctions, or offers, attempts, or agrees to auction, any real estate; . . . ."

[4] § 4735.01(H) provides that "[a]ny person, partnership, association, limited liability company, limited liability partnership, or corporation, who, for another, in consideration of compensation, by fee, commission, salary, or otherwise, or with the intention, in the expectation, or upon the promise of receiving or collecting a fee, does, or offers, attempts, or agrees to engage in, any single act or transaction contained in the definition of a real estate

estate broker" must be licensed in Ohio, pursuant to O.R.C. § 4735.02(A)[5]; and (4) no right of action can accrue to, and no compensation can be collected by, real estate brokers who are unlicensed, under O.R.C. § 4735.21(A)[6]. (Doc. 76 at 10-15). Accordingly, Beck concludes, Transact cannot recover.

The Court does not agree. Oil and gas leases are not "real estate" under Ohio law. Beck's tidy argumentation, focused as it is on statutory language, ignores the fact that, in *practice*, oil and gas leases have not historically been considered interests in land in Ohio. A thorough survey of Ohio case law leaves this Court convinced that the Ohio Supreme Court, if given the occasion to rule on this issue today, would so hold.

In its previous review and analysis of these cases, this Court reasoned that, in Ohio, "oil and gas leases . . . are not leases as that term is traditionally used"; instead, "Ohio courts appear to recognize that such leases create a license to enter upon the land for the purpose of exploring and drilling for oil and gas." *In re Frederick Petroleum Corp.*, 98 B.R. 762, 766 (S.D. Ohio 1989). In *Frederick*, this Court considered the application of the bankruptcy laws, specifically 11 U.S.C. § 365(a), to oil and gas leases in Ohio. Because § 365(a) deals with "leases of real property," the Court was required to determine the nature of oil and gas leases in Ohio. After conceding that "the exact nature of a lessee's interest under an oil and gas lease has not be clearly established in Ohio," 98 B.R. at 763, the Court undertook a thorough examination of Ohio case law, allowing it to conclude that "an oil and gas lease is regarded under Ohio law as being more than a mere rental of the land for a specified term such as would be involved in a traditional lease." *Id.* at 766.

---

broker, whether an act is an incidental part of a transaction, or the entire transaction, shall be constituted a real estate broker or real estate salesperson under this chapter."

[5] § 4735.02(A) provides, in relevant part, that "Except [when an out-of-state broker partners with a broker licensed in Ohio], no person, partnership, association, limited liability company, limited liability partnership, or corporation shall act as a real estate broker or real estate salesperson, or advertise or assume to act as such, without first being licensed as provided in this chapter."

[6] § 4735.21(A) provides, in relevant part, that "[n]o right of action shall accrue to any person, partnership, association, or corporation for the collection of compensation for the performance of the acts mentioned in section 4735.01 of the Revised Code, without alleging and proving that such person, partnership, association, or corporation was licensed as a real estate broker or foreign real estate dealer."

Indeed, from the earliest cases on this issue, Ohio courts have treated oil and gas leases as different from an interest in real property. In *Ohio Oil Co. v. Toledo, Findley & Springfield RR Co.*, 2 Ohio C.D. 505 (C.C. Ohio 1889), for example, the Circuit Court of Ohio, applying Ohio law, held that oil and gas leases "[are] not a right in the land as such, but a right to enter upon the land." Similarly, in *Herrington v. Wood*, 3 Ohio C.D. 475 (C.C. Ohio 1892), the court explained that an oil and gas lease "is not strictly a lease, but a license coupled with a conditional grant, conveying the grantor's interest in the gas well, conditioned that gas and oil is found in paying quantities." *See also Miller v. Vandergrift*, 20 Ohio C.D. 730 (C.C. Ohio 1892) ("It is sufficient to say that we regard [oil and gas leases] as not leases in the ordinary acceptation of the term, but as a sale of the oil and gas under certain stipulations and provisions embodied under the contract."). As this Court explained, in these early cases, courts generally "distinguished between instruments which purported to convey title to the land containing the oil and gas and those which merely granted the right to explore for and produce oil and gas." *Frederick*, 98 B.R. at 764. Thus, in *Detlor v. Holland*, 57 Ohio St. 492, 505 (1898), an agreement giving the lessee "the sole right to produce [oil and gas]" from a tract of land was not a lease, but merely a grant of an exclusive right to produce during the term. While in *Harris v. Ohio Oil Co.*, 57 Ohio St. 118, 129-30 (1897), the Ohio Supreme Court found that a lease "grant[ing] . . . for the purpose and with the exclusive right of drilling, . . . all that certain track of land," was "more than a mere license"; rather, it was "a lease of the land for the purpose and period therein, and the lessee has a vested right to the possession of the land to the extent reasonably necessary."

More recently, however, the Ohio Supreme Court again considered the status of oil and gas leases, while deciding whether such leases must be recorded under Ohio law, and found that a grant of "all the oil and gas in and under" a tract of land, as well as "the right and privilege of operating upon said premises . . . for the obtaining of such oil and gas," was *not* a grant of real property. *Back v. Ohio Fuel Gas Co.*, 113 N.E.2d 865, 866-67 (Ohio 1953). The court held that

8

> [p]ossession of oil and gas, having as they do a migratory character, can be acquired only be severing them from the land under which they lie, and in effect the instrument of conveyance in the instant case is no more than a license to effect such severance. The very sale of oil and gas, separate and apart from the real estate surface, constitutes, in law, a constructive severance such as occurs in the case of sale of standing timber or growing crops.

*Id.* at 867.

Given this Court's conclusion in *Frederick*, and the Ohio Supreme Court's decision in *Back*, it remains only for the Court to survey more recent cases to determine whether Ohio law has changed in the years since. It is this Court's opinion that the Ohio Supreme Court would still hold that oil and gas leases are not part of the real estate in Ohio.

Three cases demand the Court's attention. First, in *Colucy v. D&H Coal Co.*, 186 N.E.2d 767 (Ohio Ct. Common Pleas 1961), the Court of Common Pleas for Tuscarawas County was asked to determine whether the plaintiff was a "real estate broker" under Ohio law. The agreement between the parties granted to the plaintiff the "sole and exclusive right to acquire . . . all mineral rights, including rights to coal, oil and gas, and/or the land wherein and whereon such minerals may be situate." *Id.* at 770. Because the plaintiff was empowered to acquire interests in land, including non-liquid mineral rights and the land itself – property not at issue here – the court concluded that the plaintiff was a real estate agent. *Id.* at 771.

Relying solely on *Colucy*, the Northern District of Ohio, in a case also involving classification as a real estate broker, announced that the definition of "real estate" in Ohio "has been held to include mineral rights, specifically rights to coal, oil and gas." *Binder v. Trinity OG Land Dev. & Exploration, LLC*, No. 4:11-CV-02621, 2012 WL 1970239, at *3 (N.D. Ohio May 31, 2012) (quotation omitted). With respect to our sister court, this Court is unconvinced. The decision in *Binder* does not evince a thorough exploration of the case law, as this Court undertook in *Frederick*, as the issue in *Binder* did not require resolution of the question of whether oil and gas leases are real estate. Instead, the court based its holding on the fact that the plaintiff was acting as a "real estate broker," not a mere "finder." The court

cited only in passing the Ohio trial court case, the relevance of which applies only to "brokers" empowered to acquire land as well as coal, oil, and gas rights, an issue not relevant here.

Finally, in *Maverick Oil & Gas, Inc. v. Barberton City School Dist. Bd. Of Ed.*, 872 N.E.2d 322 (Ohio App. 2007), the Ninth District Court of Appeals considered the status of an oil and gas lease on property owned by the Barberton City Schools. The lessee sought an injunction to prevent the school district from restricting its access to an oil well on the property, and the court found that the school district's grantor held the property subject to the oil and gas lease, and therefore the school board, as grantee, likewise took the property subject to that lease. *Id.* at 327. The court noted that an oil and gas lease, while "governed by contract law," also "creates a limited property right, such that the lessee has the right to possess the land to the extent reasonably necessary to perform the terms of the lease on his part." *Id.* (citing *Harris*, 57 Ohio St. at 129-130). While the Court takes this statement as persuasive authority, this Court does not believe, given the weight of authority discussed above, that the Ohio Supreme Court would agree. *See Allen v. Andersen Windows, Inc.*, 913 F. Supp. 2d 490, 499 (S.D. Ohio 2012) ("A court should not disregard the decisions of intermediate appellate state courts unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."). Relying solely on *Harris*, a decision from 1897, the court in *Maverick* did not attempt to reconcile the early Ohio cases in conflict with that opinion, nor did it consider the impact of *Back* on the continuing validity of *Harris*.

Moreover, this Court's conclusion here accords both with recent legislative action in Ohio, as well as the law of other jurisdictions with more substantial bodies of oil and gas law.[7]

The Ohio legislature is currently considering H.B. 493,[8] introduced in last year, which would give the Chief of the Ohio Division of Oil and Gas Resources Management (the "Division") authority to

---

[7] *See El Camino Res. Ltd. v. Huntington Nat. Bank*, 712 F.3d 917, 922 (6th Cir. 2013) (a federal court sitting in diversity "must ascertain the state law from all available data, which [also] includes . . . cases from other jurisdictions, and secondary sources.")

[8] *See Wade v. Bethesda Hospital*, 337 F. Supp. 671, 674 (S.D. Ohio 1971) (taking judicial notice, on a motion to dismiss, of proposed bills in the Ohio legislature, for the purpose of determining the current scope of authority of an Ohio judge.)

regulate "land professionals" – that is, persons engaged in negotiating business agreements for exploration or development of oil and gas, and negotiating the acquisition of mineral rights for oil and gas.  H.B. 493 §§ 1509.31(A)(1), (2).  Such land professionals would, under the proposed law, be required to register with the Division.  *Id.* § 1509.31(B).  While this does not end the inquiry, it does provide persuasive evidence that persons engaged in negotiating the purchase and sale of oil and gas rights do not currently fall under the ambit of the real estate laws.

In addition, this Court also finds persuasive the decisions of other states with a more extensive history of oil and gas production.  In Oklahoma, for example, an oil and gas lease merely "constitutes a right to search for and capture [oil and gas]," not an interest in real property.  *Halliburton Oil Producing Co. v. Grothaus*, 981 P.2d 1244, 1251 (Ok. 1998).  *See also Pauline Oil & Gas Co. v. Fischer*, 90 P.2d 411, 412 (1939) (the interest conveyed by an oil and gas lease is not real estate within the meaning of § 706, which gives a judgment creditor a lien upon the real estate belonging to the judgment debtor); *State v. Shamblin*, 90 P.2d 1053, 1055 (1939 ) (oil and gas mining leases are chattels real and therefore personal property).  Many other oil-and-gas-producing states have come to a similar conclusion.  *See, e.g.*, *Bd. of County Cmr's of Johnson County v. Greenhaw*, 734 P.2d 1125, 1128 (Kan. 1987) ("A leasehold estate, except an oil and gas lease, is real estate under Kansas law.*")*, *Ingram v. Ingram*, 521 P.2d 254, 257 (Kan. 1974) (under Kansas law, "an oil and gas lease leasehold interest is personal property," and "merely conveys a license to enter upon the land and explore for such minerals."); *see also Backar v. Western States Producing Co.*, 547 F.2d 876, 881-82 (5th Cir. 1999) (Under New York law, but not under Texas law, oil and gas leases are personal property); *compare Salvex, Inc. v. Lewis*, 546 So. 2d 1309, 1313 (La. Ct. App. 1989) *writ denied*, 551 So. 2d 1323 (La. 1989) (cataloging Louisiana's long debate over the status of oil and gas leases, eventually resolved by action of the state legislature classifying oil and gas leases as an interest in real property).

In essence, this Court reaffirms its prior conclusion in *Frederick*, where it stated that "Ohio courts, if given the opportunity to do so, would characterize the property interests involved [here] as being

11

like or similar to the interest recognized under Oklahoma law," and common to many oil-producing states, and hold that oil and gas leases are not a grant of real property.  98 B.R. at 766.  Accordingly, the Court declines to dismiss Counts II, V, and VI of Transact's Amended Complaint (Doc. 61).

## VI.   CONCLUSION

For the foregoing reasons, Beck's Motion to Dismiss (Doc. 76) is hereby **GRANTED IN PART AND DENIED IN PART**.  As a result of this Order, Wellington's Motion for Oral Argument and Transact's Motion for Leave to File Notice of Supplemental Authority Instanter (Doc. 98, Doc. 139) are **MOOT** and, accordingly, **DISMISSED**.

**IT IS SO ORDERED.**

                                                                                                        /s/ Algenon L. Marbley  
                                                                                                        **ALGENON L. MARBLEY**  
                                                                                                        **UNITED STATES DISTRICT JUDGE**

**DATED: September 20, 2013**