IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| WELLINGTON RESOURCE GROUP LLC : : : Plaintiff, : : v. : : BECK ENERGY CORPORATION, : : Defendant. : | Case No. 2:12-CV-104 <br><br> JUDGE ALGENON L. MARBLEY <br><br> Magistrate Judge Elizabeth P. Deavers |

## OPINION & ORDER

## I.  INTRODUCTION

This matter is before the Court on Defendant and Third-Party Plaintiff Beck Energy Corporation's ("Beck") Motion to Dismiss (Doc. 113) against Intervenor-Plaintiff Marcellus Shale Land Acquisition Group, LLC's ("MSLAG") First Intervenor Complaint (Doc. 100).  Pursuant to Fed. R. Civ. P. 12(b)(6), Beck moves to dismiss MSLAG's two causes of action.  For the reasons stated below, Beck's Motion to Dismiss is hereby **DENIED**.

## II.  PROCEDURAL POSTURE

This case originated with a suit brought in diversity jurisdiction by Wellington against Beck, alleging breach of contract and unjust enrichment / quantum meruit.  Shortly after the case began, Transact Partners International, LLC, sought and was granted leave to intervene, and filed claims against both Wellington and Beck.  These parties have filed several rounds of amended pleadings, with the result that Beck now asserts counterclaims against Wellington, as well as third-party claims against individuals associated with Wellington, and Third-Party Defendants Michael Sahadi and Levencrest Consulting, Inc.  Wellington, Levencrest, and the Third-Party Defendants have answered, while Beck has answered Wellington but moved to dismiss Transact's claims against it.

While that motion was pending, Intervenor MSLAG sought and was granted leave to intervene, and in turn filed claims against Beck. Beck moved to dismiss, in a motion that is now before the Court. This motion has been fully briefed, and is ripe for review.[1]

## III.   STATEMENT OF FACTS

Given the number of parties involved, as well as the voluminous filings, multiple competing versions of the events of this case have been presented to this Court. For the purposes of this Motion to Dismiss, however, the Court accepts as true the facts as pleaded by non-movant MSLAG in its Complaint (Doc. 100).

MSLAG, a company based in Pittsburgh, Pennsylvania, sells, purchases, and markets assets in the oil and gas development industry. (*MSLAG's Complaint*, Doc. 100 at ¶¶ 1, 8). In early 2011, Wellington approached MSLAG regarding assets owned by its client, Beck, and informed MSLAG that, on February 28, 2011, it had entered into a contract with Beck pursuant to which Wellington would assist Beck in identifying companies interested in purchasing its business and assets. (*Id.* at ¶ 11). According to Wellington, Beck owned and operated oil and gas wells in southeastern Ohio, including pipelines, surface facilities, and oil and gas leases. (*Id.* at ¶ 13). Beck had agreed to pay Wellington 5% of the total purchase price, if and when Beck executed an agreement with a purchaser introduced to it by Wellington. (*Id.* at ¶ 12). Wellington asked MSLAG to use its information, experience, and industry contacts to help find a qualified purchaser for Beck, and agreed to split even with MSLAG all compensation it would receive from Beck upon the sale of Beck's business. (*Id.* at ¶¶ 14-15).

Around this time, Wellington and MSLAG entered into an oral agreement whereby MSLAG would assist in procuring a buyer, and would share in any fees received from Beck by Wellington. (*Id.* at ¶¶ 14-16). Months later, on May 26, 2011, MSLAG and Wellington executed a "Non-Circumvention and Non-Disclosure Agreement," pursuant to which both parties agreed not to contact or deal with any person

---

[1] Transact has filed cross-claims against MSLAG (Doc. 116), which MSLAG moved to dismiss (Doc. 128). MSLAG's motion is still pending before the Court.

introduced by the other party, without that party's written permission, and not to disclose to third parties the identity of any introduced parties. (*Id.* at ¶ 20). Furthermore, on August 9, 2011, MSLAG and Wellington executed a "Fee Sharing Agreement," which stated that "MSLAG represent[ed] XTO," that XTO was interested in purchasing Beck's business, and that MSLAG and Wellington would share equally all fees, etc., that Wellington receives from Beck, if Beck and XTO enter into a purchase and sale agreement. (*Id.* at ¶ 21).

Consistent with their arrangement, but before a written agreement, MSLAG had begun searching for potential buyers for the Beck assets and, around May 4, 2011, contacted XTO Energy, Inc. ("XTO"), a subsidiary of Exxon Mobil Corporation. (*Id.* at ¶¶ 17-18). MSLAG introduced XTO to Wellington sometime in the summer of 2011, and Wellington introduced XTO to Beck on August 11, 2011. (*Id.* at ¶ 22). During these introductions, XTO asked that Wellington ensure that MSLAG "be given the credit" for introducing XTO to Beck. (*Id.* at ¶ 23).

At this time, it was MSLAG's belief that Beck was aware, or should have been aware, that Wellington had contracted with MSLAG, and that MSLAG had located XTO and brought the parties together to discuss the potential sale of the Beck assets. (*Id.* at ¶ 24). Once XTO and Beck were brought together, however, MSLAG had no further participation in, or control over, the negotiations between XTO and Beck. (*Id.* at ¶ 25).

On November 9, 2011, XTO and Beck entered into a purchase and sale agreement, whereby XTO agreed to purchase certain Beck assets for the sum of $85,961,346.00, and pay Beck 6.35% of the gross revenue realized from the production of oil and gas from those assets. (*Id.* at ¶ 26). After the sale, Wellington requested its 5% compensation from Beck, and was denied. (*Id.* at ¶ 27). In turn, MSLAG requested its share of the fees, commissions, and/or royalties from Wellington, and was refused. (*Id.* at ¶ 29).

Wellington commenced this action against Beck on February 1, 2012 (Doc. 1). MSLAG moved to intervene on November 27, 2012 (Doc. 90), and filed its First Intervenor Complaint against Beck on January 3, 2013 (Doc. 100), claiming unjust enrichment (Count I) and misappropriation of trade secrets (Count II). One month later, Beck filed the present motion to dismiss all of MSLAG's claims (Doc. 113).

## IV.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows for a case to be dismissed for "failure to state a claim upon which relief can be granted." Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). Thus, the Court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). Although liberal, Rule 12(b)(6) requires more than bare assertions of legal conclusions. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted). Rather, the complaint must "'give the defendant fair notice of what the claim is, and the grounds upon which it rests.'" *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). In short, a complaint's factual allegations "must be enough to raise a right to relief about the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## V.  ANALYSIS

Beck raises three objections to MSLAG's claims. First, Beck restates the argument it made against Transact in its earlier Motion to Dismiss (Doc. 76): oil and gas leases are interests in "real estate" under Ohio law; any seller, purchaser, or marketer of such interests is a "real estate broker"; a real estate broker must be duly licensed in Ohio; otherwise all recovery, in law or equity, is barred. (*Beck's Motion to Dismiss*, Doc. 113, at 6-16, 17-18). Second, Beck asserts that the Fee Sharing Agreement between MSLAG and Wellington "constitutes a breach of fiduciary duty" and that this therefore "precludes either

4

party from recovering a commission." (*Id.* at 16-17).  Finally, Beck argues that MSLAG has failed to state a claim under Ohio trade secrets law, § 1333.61 *et seq.*, because MSLAG has not described any secret with adequate specificity to demonstrate that it qualifies as a "trade secret." (*Id.* at 18-19).

## A.  Real Estate Claims

The majority of Beck's argument challenges the ability of MSLAG to recover in equity, or under the Trade Secrets statute, because it is not a licensed real estate broker in Ohio.  The Court addressed this argument in its previous Opinion and Order (Doc. 149), where it found that, under Ohio law, oil and gas leases are not considered interests in real estate, and therefore the statutory bar to recovery for unlicensed real estate brokers is inapplicable.  For the same reasons, the Court declines to dismiss MSLAG's Complaint on this ground.

## B.  Breach of Fiduciary Duty

Beck next challenges MSLAG's Complaint under the logic that:  (1) MSLAG and Wellington represent adverse parties (XTO and Beck, respectively); (2) MSLAG and Wellington have entered into a fee-sharing agreement; (3) such agreement was undisclosed to Beck; and thus (4) MSLAG and Wellington have both breached their fiduciary duties and cannot recover.  (Doc. 113 at 16-17).  Beck's argument misses the mark.

As a threshold matter, the Court notes that, because oil and leases are not real estate in Ohio, the statutes and case law governing real estate brokers are not controlling.  In addition, because this is a motion to dismiss, the Court draws all inferences in the light most favorable to the non-movant, MSLAG.

In Ohio, a "fiduciary relationship" is one in which "special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." *Ed Schory & Sons, Inc. v. Soc. Nat'l Bank*, 662 N.E.2d 1074, 1081 (Ohio 1996).  A fiduciary relationship can be created by formal agreement, or may "arise *de facto* from an informal confidential relationship," if both parties understand that "a special trust or confidence has been

5

reposed." *Cairns v. Ohio Sav. Bank*, 672 N.E.2d 1058, 1062 (Ohio App. 1996).  The existence of a fiduciary relationship "depends on the facts and circumstances between the parties," *Depugh v. Ohio Dep't of Commerce, Div. of Real Estate*, 715 N.E.2d 622, 625 (Ohio App. 1998), and "the inquiry as to whether a fiduciary relationship exists is necessarily fact-specific"; therefore, "a claim alleging the existence of a fiduciary duty is usually not subject to dismissal under Rule 12(b)(6)." *Antioch Litig. Trust v. McDermott Will & Emery LLP*, 738 F. Supp. 2d 758, 772 (S.D. Ohio 2010).  Ordinarily, however, "a business transaction where the parties deal at arm's length does not create a fiduciary relationship." *Hoyt v. Nationwide Mut. Ins. Co.*, 2005-Ohio-6367 (Ohio Ct. App. Dec. 1, 2005).

Given the fact-intensive inquiry required to determine a fiduciary relationship, the Court cannot conclude, on a motion to dismiss, that MSLAG was a fiduciary of XTO.  Although MSLAG's agreement with Wellington states that "MSLAG represents that it represents . . . XTO," such language does not establish a fiduciary relationship, especially when MSLAG has denied this fact in its own filings, and neither the alleged agreement between MSLAG and XTO, nor any allegations from XTO itself, is before the Court.  *See Cleveland Constr., Inc. v. Roetzel & Andress, L.P.A.*, 2011-Ohio-1237 (Ohio Ct. App. Mar. 17, 2011) *appeal not allowed*, 951 N.E.2d 1047 (Ohio 2011) ("A fiduciary relationship *cannot be unilateral* and may be created informally only when *both parties* understand that a special trust or confidence has been reposed.") (emphasis supplied).  An agreement between two parties cannot create a fiduciary relationship between one of those parties and some third party; that is, language in an agreement between MSLAG and Wellington cannot establish a fiduciary relationship between MSLAG and XTO.  *Applegate v. Fund for Constitutional Gov't*, 592 N.E.2d 878, 881 (Ohio App. 1990) (a fiduciary relationship "cannot be unilateral; a mutual understanding must exist.").

Furthermore, while Beck, in its Second Amended Answer and Cross-Complaint against Wellington (Doc. 120) alleges that it entered into a fiduciary relationship with Wellington, this allegation is also fact-specific, and denied by Wellington.  (*See Wellington's Answer to Beck's Second Amended Counterclaims and Third-Party Claims*, Doc. 125, at 3).  The Court cannot resolve this issue on a motion

6

to dismiss, and without establishing a fiduciary relationship between itself and Wellington, Beck cannot attack the fee-sharing agreement between Wellington and MSLAG.

## C. Ohio Trade Secrets Law

Lastly, Beck asserts that MSLAG has failed adequately to plead its claim under O.R.C. § 1333.61 for misappropriation of trade secrets. (Doc. 113 at 18). Specifically, Beck argues that MSLAG has failed to describe what "trade secret" MSLAG possessed and, to the extent that MSLAG refers solely to its knowledge of the business opportunity with XTO, such a fact was "hardly a secret," but rather "generally known" and thus not worthy of trade secret protection. (*Id.* at 18-19). Additionally, in its Reply, Beck adds that the information was not "misappropriated," since, according to its allegations, MSLAG itself brought Beck and XTO together. (Doc. 127 at 17). Instead, argues Beck, MSLAG's only claim is that it was not paid. (*Id.*)

In order to succeed on a claim for misappropriating trade secrets, a plaintiff must establish: "(1) the existence of a trade secret; (2) the acquisition of a trade secret as a result of a confidential relationship; and (3) the unauthorized use of a trade secret." *Heartland Home Fin., Inc. v. Allied Home Mortgage Capital Corp.*, 258 F. App'x 860, 861 (6th Cir. 2008).

The determination of whether information constitutes a trade secret is a highly fact-specific inquiry. *DeBoer Structures Inc. v. Shaffer Tent & Awning Co.*, 233 F. Supp. 2d 934, 948 (S.D. Ohio 2002). In relevant part, O.R.C. § 1333.61 provides that a "trade secret" is "or any business information or plans, financial information, or listing of names, addresses, or telephonic numbers," that both "derives independent economic value . . . from not being generally known" to other persons who could obtain economic value from its disclosure or use; and "is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." O.R.C. § 1333.61(D). The Ohio Supreme Court has adopted six factors for consideration in determining whether an item constitutes a trade secret:

> (1) The extent to which the information is known outside the business;
> (2) the extent to which it is known to those inside the business, i.e., by

7

>the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information.

*State ex rel. Plain Dealer v. Ohio Dept. of Ins.*, 687 N.E.2d 661, 672 (Ohio 1997). While Beck challenges factors (1) and (3), it does not discuss or challenge the other four *Plain Dealer* factors, *i.e.*, the extent to which the information is generally known inside MSLAG, the savings effected and value to MSLAG, the effort or money expended by MSLAG to develop the information, or the time and expense required to duplicate it. Beck argues only that the information in question was not "secret" under the statutory definition, and furthermore that MSLAG did not take precautions to keep the information secret because it shared the information with Wellington and, ultimately, with Beck itself, in order to accomplish the sale to XTO. (*See* Doc. 113 at 18-19).

In this case, MSLAG has adequately alleged the existence of trade secrets. First, MSLAG has satisfied the first *Plan Dealer* factor, regarding the degree to which the information is known outside the business. In its complaint, MSLAG asserts that it has developed confidential, proprietary information regarding business opportunities in the oil and gas development industry, including the opportunity with XTO. (Doc. 100 at ¶ 39). Under Fed. R. Civ. P. 8, MSLAG is not obliged to plead details of its trade secrets with any greater specificity. *Glasstech, Inc. v. TGL Tempering Systems, Inc.*, 50 F. Supp. 2d 722, 729 (N.D. Ohio 1999). In *Glasstech*, the plaintiff alleged misappropriation of trade secrets, as well as patent infringement, on account of its sale and installation of a bending and tempering system, which contained certain confidential technology built into it. 50 F. Supp. 2d at 724-25. The plaintiff had original sold the system to another company, via a contract containing confidentiality provisions, but subsequent transfers of the system by sale and bankruptcy proceedings had resulted in the system in the hands of the defendant, a competitor. *Id.* Despite the fact that the plaintiff "had not disclosed which portion of the bender contains trade secrets other than the portions . . . which are already patented," the court found that "it would be improper under Fed. R. Civ. P. 8" for the court to require the plaintiff to

8

provide greater specificity in its pleadings.  *Id.* at 729.  Thus, the court declined to dismiss the trade secrets claim on this ground.  *Id.*

MSLAG has also adequately alleged the precautions it took to safeguard the secrecy of its information, the third *Plain Dealer* factor.  While MSLAG's Non-Disclosure Agreement with Wellington does not itself establish that MSLAG's information was a trade secret, it does sufficiently demonstrate that MSLAG undertook some efforts to protect the confidential nature of its information.  The Sixth Circuit has emphasized that a possessor of a potential trade secret must take some active steps to maintain secrecy, because "once material has been publically disclosed, it loses any status it ever had as a trade secret."  *Heartland Home Finance*, 258 F. App'x at 862.  Thus, "disclosure to potential or actual customers, *absent a confidentiality agreement or understanding*, will destroy any protection . . . as a trade secret."  *Thermodyn Corp. v. 3M Co.*, 593 F. Supp. 2d 972, 986 (N.D. Ohio 2008) (emphasis supplied).  In addition, the independent economic value of this type of information is apparent from the fact that both Beck and Wellington sought out and contracted with parties in order to provide it.  (*See, e.g.*, *id.* at ¶¶ 10-11, 14-15); *compare Lehman v. Dow Jones & Co.*, 783 F.2d 285, 287-89, 297-98 (2d Cir. 1986) (information concerning business acquisition opportunity can be a trade secret).  Given the particularly fact-intensive nature of the nature of "trade secrets," MSLAG has done enough to survive a motion to dismiss.  *See Fred Siegel Co., L.P.A. v. Arter & Hadden*, 707 N.E.2d 853, 862 (Ohio 1999).

Finally, MSLAG has satisfied the "unauthorized use" or "misappropriation" element of the cause of action.  Under Ohio law, "misappropriation" is defined to mean, in pertinent part, "[a]cquisition of a trade secret of another . . . by improper means."  O.R.C. § 1333.61(B).  "Improper means" includes "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage."  *Id.* § 1333.61(A).  MSLAG, in its Response, argues that it satisfies this definition because "Beck Energy obtained access to MSLAG's confidential information under false pretenses" – that is, by representing that it was looking to sell its business, and promising to pay, "all without any intent to compensate MSLAG for that information."  (*MSLAG's Response to Beck's Motion to Dismiss*, Doc. 121 at 19 n. 10).

9

Taken as true, this allegation could constitute misrepresentation, and, therefore, satisfy the requirements of § 1333.61.

Accordingly, the Court declines to dismiss MSLAG's claim for misappropriation of trade secrets.

## VI.   CONCLUSION

For the foregoing reasons, Beck's Motion to Dismiss (Doc. 113) is hereby **DENIED**.

**IT IS SO ORDERED.**


       **/s/ Algenon L. Marbley**
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: September 20, 2013**